2003 VT 48

## Jean Butler v. Huttig Building Products

[830 A.2d 44]

No. 02-113

Present: Amestoy, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed May 23, 2003

*Richard H. Munzing* of *Weber, Perra & Munzing, P.C.*, Brattleboro, for Plaintiff-Appellant.

*Keith J. Kasper* of *McCormick, Fitzpatrick, Kasper & Burchard, P.C.*, Burlington, for Defendant-Appellee.

¶ 1. **Allen, C.J. (Ret.), Specially Assigned.** Claimant suffered serious injuries in a workplace accident, and appeals from an order of the Commissioner of Labor and Industry terminating his workers' compensation benefits due to fraud. We reverse and remand the Commissioner's decision on claimant's right to permanent disability benefits, but affirm the remainder of her order.

¶ 2. The undisputed facts are as follows. On February 24, 1997, while working for defendant Huttig Building Products as a tractor-trailer driver, claimant was seriously injured after 1,000 pound glass doors fell on his head at a loading dock. His injuries included fractures and dislocations in his spine, trauma to his left knee, ruptured disks in his back, and a central spinal cord contusion. Upon being struck, claimant immediately lost consciousness and suffered paralysis of his arms and legs. Claimant underwent three surgeries to address his spinal injuries, and was discharged from the hospital at the end of March 1997. At that time, claimant was still unable to walk and required help from others to engage in daily living activities. After his release, claimant received treatment for pain, depression, headaches, and other problems. He also received extensive physical and

occupational therapy and home nursing services. Claimant obtained workers' compensation benefits for his injuries, including temporary disability, medical, and vocational rehabilitation benefits.

¶ 3. On September 13, 2000, defendant filed a so-called Form 27 with the Workers' Compensation Division of the Department of Labor and Industry notifying claimant that it was discontinuing temporary disability payments and medical benefits effective September 22, 2000. Defendant cited claimant's fraudulent activity as the reason for terminating payments, and filed supporting evidence to substantiate its allegations of fraud. On October 26, 2000, the Commissioner of the Department of Labor and Industry approved the Form 27. The following day, claimant filed a notice and application for a hearing to contest the termination of his benefits. In his application for hearing, claimant sought restoration of his temporary total disability compensation, in addition to medical and vocational rehabilitation benefits and attorneys' fees.

¶ 4. Initially, the Director of the Workers' Compensation Division denied claimant's request for a hearing, explaining that the Department was investigating defendant's allegations of fraud separately under 21 V.S.A. § 708 to determine whether to issue an administrative penalty for claimant's conduct. The Director asserted that claimant was not entitled to a hearing on the termination of his benefits, but that claimant would be offered an opportunity for a hearing on the administrative penalty if one issued. After corresponding with claimant's counsel, the Director reversed herself. A hearing on defendant's termination of workers' compensation benefits was held in May and June, 2001.

¶ 5. Prior to the hearing, claimant and defendant stipulated to some facts concerning claimant's fraud. Specifically, claimant admitted that he falsified (1) two medical notes from one of his doctors, Dr. Katz, (2) three receipts for the Fitness Barn, the place claimant performed physical therapy exercises, seeking reimbursements for overpayments claimant allegedly made, and (3) mileage reimbursement requests on eight separate dates for medical treatments claimant never received. The mileage and Fitness Barn reimbursements claimant falsified totaled $1,463.96. One of the falsified notes from Dr. Katz increased the dosage for certain medications claimant was taking, including an increase in the pain killer OxyContin.

¶ 6. Claimant's fraud went beyond the facts to which he stipulated, however. The Commissioner found that claimant sought mileage reimbursement for four trips to see Dr. Katz that claimant never

made. Claimant also lied to his health care providers and exaggerated his symptoms in their presence. Claimant tried to deceive his physicians as well as the workers' compensation hearing officer by presenting himself as having a claw-like deformity in his hands known as "main en griff posture." He alleged that his hands were cold, stiff, and required gloves because of the deformity, and he wore gloves to the hearing. A videotape made without claimant's knowledge contradicted those claims. The tape showed claimant holding a gun in snowy weather without gloves and without any sign of a claw-like deformity, or any difficulty in performing fine motor movement.

¶ 7. Ultimately, the Commissioner upheld defendant's Form 27 termination and denied claimant further benefits. The Commissioner concluded that claimant's deceptive practices were ongoing, and that "what he tells to health care providers cannot be trusted." Although the Commissioner denied claimant's request to reinstate his benefits, she found that claimant's work-related injuries were undisputed and left him with a significant permanent impairment. The extent of the permanent disability had not been determined at that time, however.

¶ 8. Following the Commissioner's denial of claimant's motion to reconsider, claimant appealed to this Court. The Commissioner certified three questions[1] for our determination in accordance with 21 V.S.A. § 672, which we have reworked into a single question for clarity: Which, if any, compensation benefits should claimant forfeit because of his fraud? As we explain, the answer to that question is all benefits, except claimant's right to permanent disability benefits.

¶ 9. We first note that claimant does not contest the Commissioner's factual findings. In that case, we confine our review to the Commissioner's legal conclusions. *Longe v. Boise Cascade Corp.,* 171 Vt. 214, 218, 762 A.2d 1248, 1253 (2000). If the Commissioner's conclusions are supported by the findings and reflect the correct interpretation of the law, we will affirm the Commissioner's decision. *Id.* at 218, 762 A.2d at 1252-53. Although we defer to the Commissioner's interpretation of the Workers' Compensation Act, we

---

[1] The questions the Commissioner certified were the following:
1. Does claimant's fraud justify the approval of Form 27 and discontinuance of claimant's compensation benefits?
2. If not, do claimant's activities warrant the discontinuance of some benefits?
3. Is the claimant's appeal to the Vermont Supreme Court timely?

As to the last question, defendant concedes that claimant's appeal was timely, and our review of the record supports that conclusion.

will not affirm an unjust or unreasonable interpretation of it. *Clodgo v. Rentavision, Inc.*, 166 Vt. 548, 550, 701 A.2d 1044, 1045 (1997). In addition, we will not disturb a discretionary decision by an administrative agency unless the decision demonstrates the agency abused its discretion, see *Piche v. Dep't of Taxes*, 152 Vt. 229, 234, 565 A.2d 1283, 1286 (1989), or exercised it in an unrestrained manner. *Lemieux v. Tri-State Lotto Comm'n*, 164 Vt. 110, 113, 666 A.2d 1170, 1172 (1995).

¶ 10. Claimant argues that the Commissioner's decision to terminate all of his workers' compensation benefits, including permanent disability benefits, was disproportionate to claimant's fraud and amounted to an abuse of discretion. Defendant counters that claimant's fraud was so pervasive that the Commissioner properly exercised her discretion by refusing to approve any further compensation for his injuries. While we in no way condone claimant's fraud, we agree that the Commissioner abused her discretion by terminating claimant's right to permanent disability benefits.

¶ 11. To resolve the present dispute, we must review the Commissioner's interpretation of the Workers' Compensation Act. When construing the Act, we seek to implement the Legislature's intent as expressed in the words of the Act itself. See *Colwell v. Allstate Ins. Co.*, 2003 VT 5, ¶ 7, 175 Vt. 61, 819 A.2d 727 (Court construes statutes to implement legislative intent found in the statute's plain language). We consider the relevant statutes at issue here in pari materia because they are part of the same statutory scheme governing workers' compensation. See *id.* at ¶ 20 (statutes that are closely related must be considered in reference to each other). We now examine the relevant provisions of the Act.

¶ 12. Workers who are injured during the course of their employment are entitled to compensation for their injuries. 21 V.S.A. § 618. The Act requires employers to provide the injured worker with medical, temporary and permanent disability, and in certain cases, vocational rehabilitation benefits. See 21 V.S.A. § 640 (medical); *id.* § 642 (temporary total disability); *id.* § 646 (temporary partial disability); *id.* § 644 (permanent total disability); *id.* § 648 (permanent partial disability); *id.* § 641 (vocational rehabilitation). Being a remedial statute, we construe the Workers' Compensation Act liberally so that injured employees receive benefits "unless the law is clear to the contrary." *St. Paul Fire & Marine Ins. Co. v. Surdam*, 156 Vt. 585, 590, 595 A.2d 264, 266 (1991); *Montgomery v. Brinver Corp.*, 142 Vt. 461, 463, 457 A.2d 644, 646 (1983); *Quinn v. Pate*, 124 Vt. 121,

124, 197 A.2d 795, 797 (1964); see also 21 V.S.A. § 709 (rule that statutes in derogation of common law must be strictly construed shall not apply when construing Act).

¶ 13. The Act provides only two clear bases for terminating workers' compensation benefits following a compensable workplace injury.[2] First, temporary disability benefits, whether partial or total, terminate once the worker's disability ends. 21 V.S.A. §§ 643, 647. Second, all benefits under the Act are subject to forfeiture for fraud. *Id.* § 708(a). In cases of fraud, the Act vests discretion in the Commissioner to require forfeiture of "all or a portion" of workers' compensation benefits. *Id.* The obvious intent of § 708(a) is to deter and sanction false claims for compensation, and to relieve employers from having to pay claims they would not otherwise be responsible for under the Act. By allowing the Commissioner to determine whether a claimant should forfeit all or some of the benefits to which the claimant is entitled, the Act also evidences an intent that the sanction be proportional, or have some relationship, to the claimant's fraud. As claimant points out, the Commissioner's rules implementing § 708(a) reflect that proportionality requirement. See Vt. Workers' Compensation & Occupational Disease Rules 45.5230, 45.5231.1-45.5231.3 (codified at 3 Code of Vt. Rules, 24 010 005-3 (2001)). Thus, forfeiture under § 708(a) must be no harsher than necessary to deter fraudulent claims and to ensure that the employer does not pay for a benefit to which the injured worker is not entitled under the Act.

¶ 14. We have no trouble upholding the Commissioner's decision to terminate claimant's right to any further medical or temporary disability benefits considering the extent of claimant's fraudulent activity in this case.[3] Claimant fraudulently sought reimbursement for expenses related to his medical treatment, falsified

---

[2] We do not mean to imply that an employee may continue to receive benefits even after his injury has healed. Once a compensable injury is established, the employee has a right to compensation, which may be terminated only where the Act clearly so provides. See 21 V.S.A. § 618 (establishing employee's right to compensation for workplace injuries); *St. Paul Fire & Marine Ins. Co.*, 156 Vt. at 590, 595 A.2d at 266 (employee entitled to benefits unless law clearly establishes otherwise).

[3] Claimant has not explained what vocational rehabilitation benefits he was receiving, and the Commissioner's decision is also silent on this point. Thus, we cannot determine whether or how claimant's fraud affected those benefits. Because we do not have an adequate record to examine claimant's argument relative to the vocational rehabilitation benefits the Commissioner terminated, we have no basis to disturb the Commissioner's conclusion on that issue.

documents to increase the dosage of certain medications his doctors prescribed, and exaggerated his symptoms. Thus, denying him any additional medical and temporary disability benefits is reasonably related to the types of benefits claimant fraudulently sought. While the Commissioner's sanction is no doubt harsh, it appears necessary to deter claimant from engaging in further deception, and it was within the Commissioner's discretion.

¶ 15. Denying claimant any compensation for his permanent disability went beyond the bounds of her discretion, however. Claimant is entitled under §§ 644 and 648 to permanent disability benefits according to the Commissioner's unchallenged finding that his disability is permanent. We believe the Legislature did not intend § 708(a) to relieve an employer from its obligation under the Act to provide permanent disability benefits to an injured worker where the permanent nature of the worker's compensable injury is undisputed as it is in this case. In other words, denying a claimant his or her statutory right to permanent disability benefits does not further the intent of § 708(a) to cull out false claims where the claim of permanent disability is not in fact false.

¶ 16. We understand the Commissioner's concerns, which defendant shares, that claimant's conduct has severely impaired his credibility, and that what claimant tells his physicians is not entirely trustworthy. But those issues pertain to the *extent* of claimant's disability and not to its existence or permanency. We expect that the forfeiture sanction we affirm here will serve to deter claimant from any further deception regarding his injuries. Moreover, when claimant seeks to establish the extent of his permanent disability, § 708(a) allows the Commissioner to fashion an award to account for the uncertainty claimant's own misconduct has created about the extent of his disability.

¶ 17. Claimant also argues that we should reverse the Commissioner's decision and reinstate all of his benefits because the Commissioner did not follow the proper procedure for terminating his benefits under § 708(a). Specifically, claimant argues that the statute entitles him to a pretermination hearing, and that the employer has no right to use Form 27 to cease paying benefits on the basis of fraud. Considering that claimant was afforded a hearing on defendant's allegations, and in light of our decision on his substantive argument, we need not decide the issue because any alleged procedural error was harmless. V.R.C.P. 61 (Court must ignore harmless errors).

*We answer the certified question as follows: Claimant's fraud justifies the termination of his temporary disability, medical, and vocational rehabilitation benefits, but not his right to permanent disability benefits. The cause is remanded for further proceedings consistent with this opinion.*